# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **M.F. and M.K.**

**No. 16-0846** (Jackson County 15-JA-147and 15-JA-149)

**FILED**

**May 22, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother E.K., by counsel Joel Baker, appeals the Circuit Court of Jackson County's August 3, 2016, order terminating her parental and custodial rights to M.F. and M.K.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Erica Brannon Gunn, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent, denying her request for a post-adjudicatory improvement period, and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2015, M.F. experienced a serious behavioral issue at school related to his autism. M.F.'s teacher called the home and M.F.'s step-father, J.K., picked the child up from the school. When M.F. returned to school he had noticeable injuries on his face and forehead, including a black eye. Accordingly, the DHHR filed an abuse and neglect petition against petitioner and the step-father. Specifically, the petition alleged that the parties engaged in domestic violence in the children's presence and that petitioner and the step-father physically and emotionally abused the children. An amended abuse and neglect petition was filed in April of 2016, alleging that petitioner and the step-father attempted to interfere with the children's statements to the DHHR.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

In January of 2016, the circuit court held a preliminary hearing wherein it heard the testimony of several witnesses. A DHHR worker testified that she observed bruises on M.F. and that M.F. reported to her that his step-father threw him on the ground and caused the bruises. She also testified that M.F. hid under a chair and reported that the bruises were the reason he was absent from school. The worker further testified that when she confronted petitioner about the allegations of abuse, petitioner denied the allegations and told her that M.F. was "not able to make sentences or be understood." Respondent called the step-father to testify but the circuit court continued the matter to allow the step-father to further confer with his attorney regarding the implications of testifying at the preliminary hearing.

Also in January of 2016, the circuit court held a second preliminary hearing wherein it heard the testimony of another witness. M.F.'s teacher testified that she observed bruises on M.F.'s forehead and a black eye. She also testified that M.F. told her that his step-father pushed him down onto the floor. She further testified that M.F. did not have bruises on his forehead or a black eye when he left school on December 15, 2015. Based on the evidence, the circuit court found that imminent danger existed at the time of the petition's filing and sustained the children's removal from the home. The circuit court ordered that petitioner, the step-father, and the children undergo psychological evaluations.

In May of 2016, the circuit court held an adjudicatory hearing wherein it heard testimony from the psychologist that evaluated the step-father, petitioner, and the children. The psychologist testified that petitioner and the step-father denied abusing the children. He also testified that the step-father had an unspecified personality disorder with antisocial and narcissistic features. According to the psychologist, M.F. stated that petitioner told him that he was not supposed to acknowledge the allegations of abuse and that he would be "back in the home soon." The psychologist further testified that, according to M.F., petitioner told him that he should tell the psychologist that "dad [did] [not] do anything." The psychologist opined that the children would be in danger if left in the step-father's care and testified that he could not formulate treatment recommendations because petitioner refused to acknowledge the abuse. Petitioner testified that she did not believe that the step-father abused the children. At the conclusion of the hearing, the circuit court adjudicated petitioner and the step-father as abusing parents. Following the adjudicatory hearing, petitioner and the step-father filed written motions requesting post-adjudicatory improvement periods.

In July of 2016, the circuit court held a dispositional hearing. A DHHR worker testified that the DHHR was seeking termination of petitioner's parental rights because she denied the abuse that led to the petition's filing. Petitioner testified that she was "willing to follow any recommendations of the DHHR" but that she did not believe that she or the step-father did anything wrong and the children were appropriately disciplined. At the conclusion of the hearing, the circuit court found that petitioner failed to acknowledge the existence of abuse in the home. The circuit court also found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect, terminated her parental rights to the

children, and denied her motion for a post-adjudicatory improvement period.[2] It is from that August 3, 2016, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's adjudicating petitioner as an abusing parent, denying her motion for a post-adjudicatory improvement period, or terminating her parental rights.

On appeal, petitioner argues that the circuit court's findings of abuse were not supported by clear and convincing evidence. West Virginia Code § 49-1-201 defines an "abused child" as "a child whose health or welfare is being harmed or threatened by [a] parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." West Virginia Code § 49-1-201 also defines an "abusing parent" as "a parent, guardian or other custodian, regardless of his or her age, whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Further, this Court has described the "clear and convincing" standard as one in which

> the evidence does not have to satisfy the stringent standard of beyond a reasonable doubt; the evidence must establish abuse by clear and convincing evidence. This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or

---

[2]All parental rights of all parents to M.F. and M.K. were terminated below. According to the guardian, the children were placed in foster homes and the permanency plan is adoption therein. Additionally, the record indicates that J.K., the father of M.K., has an additional child (B.F.) that was the subject of the proceedings below. J.K.'s parental rights to B.F. were terminated below. According to the guardian in J.K.'s related appeal, this additional child was placed with the non-offending mother, J.F. and the permanency plan is to remain in that home. Because petitioner is not the biological mother of this additional child, he is not the subject of this appeal.

conviction as to the allegations sought to be established." *Brown v. Gobble,* 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)

*In re F.S. and Z.S.*, 233 W.Va. 538, 546, 759 S.E.2d 769, 777 (2014).

In this case, as to the May of 2016 adjudication, the DHHR alleged that petitioner physically and emotionally abused the children. At the first preliminary hearing, multiple witnesses testified to observing injuries on M.F. after he was in the step-father's care and that M.F. reported that the step-father threw him on the ground and caused his injuries. The DHHR worker testified that M.F. also reported that petitioner would not allow him to attend school because of his injuries. M.F.'s teacher testified that the step-father "hung up on her" when she telephoned petitioner in December of 2015, and was angry when he picked M.F. up from school. The worker also testified that she was able to understand and communicate with M.F., despite petitioner's contention that he could not formulate sentences or communicate effectively. At the adjudicatory hearing, the psychologist testified that he could not formulate treatment recommendations because petitioner refused to acknowledge the abuse in the home.

Given the clear and convincing evidence of physical abuse, we find no error in the circuit court's order regarding adjudication. The circuit court found that the testimony of the DHHR worker, M.F.'s teacher, and the psychologist to be "unbiased and credible." Despite the evidence to the contrary, petitioner simply denied the abuse and claimed that the M.F.'s injuries came from his own self-injurious behavior. The record reflects, however, that petitioner interfered with the children's statements to the DHHR and did not allow M.F. to attend school because of his abuse related injuries. Petitioner's actions demonstrated her unwillingness and inability to acknowledge her culpability in this matter. As such, the circuit court was within its discretion to discount her testimony and credit the testimony of the DHHR worker, M.F.'s teacher, and the psychologist. Further, our case law provides that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); *see also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Therefore, we find adequate evidentiary support for the finding that petitioner abused the children. Based on our review of the record on appeal, the circuit court committed no error in finding that circumstances of this case meet the statutory definition of an "abused child" and that petitioner was an abusing parent.

Petitioner next argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. In support of her argument, and without citation to the record, petitioner asserts that she presented evidence that demonstrated she was "willing and wanting to fully participate" in an improvement period. Upon our review, however, the Court finds that petitioner failed to satisfy the applicable burden to obtain an improvement period. We have often noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (stating that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an

improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements").We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period . . . .'"*In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, it is clear from the record on appeal that petitioner failed to demonstrate her ability to fully participate in an improvement period. The circuit court was presented with evidence that petitioner denied the allegations of abuse and interfered with the children's statements to the DHHR and the psychologist.

> Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.,* 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *Charity H.,* 215 W.Va. at 217, 599 S.E.2d at 640). As such, it is clear that petitioner failed to establish that she was likely to fully participate in a post-adjudicatory improvement period and we find no error in the circuit court denying petitioner's motion.

Finally, petitioner argues on appeal that the circuit court erred in terminating her parental rights without granting her request for an improvement period. The Court, however, does not agree. Petitioner's argument ignores the facts as presented below. The circuit court found that petitioner failed to remedy the conditions of abuse and neglect in the home. These findings were based on substantial evidence, including evidence that petitioner failed to acknowledge the abuse or accept responsibility for her actions. Further, we have previously held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *Charity H.*, 215 W.Va. at 216, 599 S.E.2d at 639 (2004).

Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child . . . .

Based upon the substantial evidence outlined above, the circuit court found there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because she failed to participate in services and interfered with the children's statements to the DHHR and the psychologist. The circuit court further found that termination of

petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings. Further, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error below.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 3, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: May 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker